IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| JAMES T. ANDERSON, JR. and MARRY H. ANDERSON, <br><br> Plaintiff, <br><br> v. <br><br> SELECT PORTFOLIO SERVICING, INC. and US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR CERTAIN MORTGAGE RELATED ASSETS, <br><br> Defendants. | **CIVIL ACTION** <br><br> **CASE NO.** <br><br> (Removed from Superior Court of Richmond County, State of Georgia, Case No. 2016-RCCV-13) |

**NOTICE OF REMOVAL**

In accordance with 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants Select Portfolio Servicing, Inc. ("SPS") and US Bank National Association as Trustee for Certain Mortgage Related Assets ("US Bank"), hereby remove this action from the Superior Court of Richmond County to the United States District Court for the Southern District of Georgia, Augusta Division. This Court has jurisdiction over this action under 28 U.S.C. §1332(d)(2). As grounds for removal, Defendants respectfully show this Court as follows:

**I.  BACKGROUND**

1. On January 16, 2016, Plaintiffs James T. Anderson and Marry H. Anderson filed a putative Class Action Complaint (the "Initial Complaint") against Defendants in the State Court of Richmond County, Case No. 2016RCCV13 (the "State Court Action").[1]  Ex. A at 5-28.

---

[1]  As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders filed in the State Court Action or served upon Defendants in the State Court Action as of the date of this filing are attached hereto as Exhibit "A."

2. In the Initial Complaint, Plaintiffs allege that SPS, as servicer of a mortgage note securing Plaintiffs' personal residence, improperly calculated the interest rate on Plaintiffs' adjustable rate mortgage on the First Change Date. Specifically, Plaintiffs allege that, pursuant to the terms of the Modification Agreement, the interest rate change on the First Change Date "shall be equal to 1.875% in excess" of the twelve month U.S. dollar denominated deposits in the London market as published in *the Wall Street Journal* (the "LIBOR Rate"). Initial Compl., ¶ 10. Plaintiffs further assert that SPS sent them an interest rate change letter reflecting a rate in excess of 1.875% of the LIBOR rate and seeking monthly payments in excess of what is allowable under the contract for the period of December 2015, to December 2016. *Id.* ¶¶ 20-21.

3. Based on these allegations, Plaintiffs seek to represent a class of individuals defined as follows:

> "All persons who entered into a loan modification agreement with Thornburg whereby their interest rate was "fixed" for a given period of time and thereafter converted to an 'adjustable rate' subject to a 'Limits on Interest Rate Changes' provision substantially identical to Section 3(e) of the Loan Modification Agreement and to whose loan Defendants applied a maximum limit on the amount of allowable interest rate decrease occurring on the First Change Date."

*Id.* at ¶ 43 ("First Class Claim").

4. Defendants received service of the Initial Complaint on February 9, 2016. *See* Ex. A at 41-43. Upon receipt of the Initial Complaint, Defendants investigated Plaintiffs' First Class Claim and identified only one Modification Agreement other than Plaintiffs' Modification Agreement in which the interest rate had been miscalculated as described in the Initial Complaint. Defendants, upon completion of their investigation, provided Plaintiffs with an affidavit attesting that, including Plaintiffs, there were a total of two Modification Agreements with interest rates that

had been calculated in a manner inconsistent with the procedure set forth in the Modification Agreement.[2]  *See* Affidavit of Curtis Pulsipher at ¶¶ 12-14, attached as Exhibit B.

5. To correct the calculated interest rate, the parties entered into a Consent Order adjusting the interest rate to 2.75%. On April 13, 2016, the State Court entered the Consent Order. *See* Ex. A at 44-49.

6. On January 10, 2017, Plaintiffs filed their First Amended Complaint ("Amended Complaint") and asserted a new theory of liability under the Modification Agreement, pleading additional claims on behalf of a new putative class. *See* Ex. A at 104-129. The Amended Complaint contains new theories and claims that were not present in the Initial Complaint.

7. Specifically, Plaintiffs' new class claims allege that the Modification Agreement prohibits Defendants from raising the interest rate for any subsequent change date after the First Change Date by any amount more than 2% of the interest rate previously in effect. Am. Compl. ¶ 28. Plaintiffs allege that they became aware of the possibility of a new claim when they received an interest rate change letter from SPS on October 21, 2016, which indicated that Plaintiffs' interest rate would increase by 27% for the period of December 2016, to December 2017. *Id.* at ¶ 27. Plaintiffs further allege that this interest rate increase requires them to make mortgage payments in excess of what is allowable under the Modification Agreement. *Id.* at ¶ 28.

8. Based on these allegations, Plaintiffs seek to represent a putative class of individuals defined as follows:

> All persons who entered into a loan modification agreement with Thornburg whereby their interest rate was "fixed" for a given period of time and thereafter converted to an 'adjustable rate' subject to 'Limits on Interest Rate Changes'

---

[2]  At this time, Defendants ascertained that Plaintiffs' First Class Claim could not satisfy the amount in controversy threshold requirement of CAFA because Plaintiffs' claims applied to only two putative class members who suffered no actual injury. Thus, Defendants had no good faith basis for federal jurisdiction at that time.

provision substantially identical to Section 3(e) of the Loan Modification Agreement, and to whose loan Defendants have attempted to apply, on any Change Date subsequent to the First Change Date, an interest rate increase of greater than 2% of the interest rate previously in effect.

*Id.* at 46(b) ("Second Class Claim").  In the Amended Complaint, Plaintiffs assert the First Class Claim in addition to the Second Class Claim.

9. This Court has original subject-matter jurisdiction over this action and all claims asserted against Defendants under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

10. Because this Court has subject-matter jurisdiction over this action, removal to this Court is proper under 28 U.S.C. §§ 1441 and 1446.

11. Venue is proper in this Court under 28 U.S.C. §§ 1441(a) and 90(c)(1) because the United States District Court for the Southern District of Georgia, Augusta Division, is the federal judicial district and division embracing the Superior Court of Richmond County, State of Georgia, where the State Court Action was filed.

12. Plaintiffs served Defendants with the Amended Complaint on January 10, 2017, using the PeachCourt efiling system.  *See* Am. Compl.  This Notice of Removal ("Notice") is timely filed in compliance with 28 U.S.C. § 1446(b)(3) because it is filed within 30 days of January 10, 2017, the date of service of the amended pleading from which "it may first be ascertained that the case is one which is or has become removable."

13. In accordance with 28 U.S.C. § 1446(d), Defendants have filed this Notice with this Court, will serve a copy of this Notice upon counsel for all parties, and will file a copy in the Superior Court of Richmond County, along with a Notice of Filing of Notice of Removal.  A copy of the Notice of Filing of Notice of Removal is attached as Exhibit C.

## II. BASIS FOR REMOVAL UNDER CAFA

14. This Court's removal jurisdiction is invoked under 28 U.S.C. § 1441 and CAFA as codified throughout Title 28 of the United States Code. CAFA became effective on February 18, 2005, and applies to any civil action commenced on or after its date of enactment. CAFA applies to this action because Plaintiffs commenced this action on January 16, 2016.

15. Congress enacted CAFA to expand federal jurisdiction over proposed class actions. CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (1) the number of proposed class members is not less than 100; (2) any member of the proposed class is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(2), d(5) & 1453(b). In addition, class actions removed under CAFA "may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b).

16. This action satisfies all of the requirements under CAFA for removal.

### A. The Putative Class Consists of At Least 100 Individuals

17. Plaintiffs allege that the putative class which they seek to represent includes "many hundreds, or perhaps thousands, of homeowners…entered into agreements with identical or substantially similar interest rate calculations as the Loan Modification Agreement…." Am. Compl. ¶ 30.

18. Moreover, Defendants have affirmed that there are at least 227 members of the putative class related to the Second Class Claim by virtue of the total number of Thornburg Loans with identical Modification Agreements. *See* Ex. B, Pulsipher Affidavit at ¶ 12.

19. Accordingly, the requirement that the number of proposed class members is not less than 100 is satisfied.

### B. Diversity of Citizenship Exists Under 28 U.S.C. § 1332(d)(2)(A)

20. The minimum diversity criterion of CAFA requires when any member of the putative class is a citizen of a state different from that of any defendant. 28 U.S.C. § 1332(d)(2)(A).

21. Plaintiffs James T. Anderson and Marry H. Anderson are citizens of Georgia. Am. Compl. ¶ 1.

22. Defendant SPS is a Utah corporation with its principal place of business in Salt Lake City, Utah. *See Id.* at ¶ 2 (acknowledging that SPS is a "corporation organized and existing pursuant to the laws of the State of Utah.")

23. Accordingly, CAFA's requirement of minimum diversity is satisfied because members of the putative class are citizens of a different state from that of one of the defendants. See 28 U.S.C. § 1332(d)(2)(A).

### C. The Aggregate Amount in Controversy, Exclusive of Interest and Costs, Exceeds the $5,000,000 Jurisdictional Threshold

24. When determining the amount in controversy under CAFA, the question is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are. *See Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 754 (11th Cir. 2010) ("The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.") It is sufficient for a defendant's notice of removal to include "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549 (2014).

25. For purposes of determining the amount in controversy under CAFA, the claims of the individual class members are aggregated. *See* 28 U.S.C. § 1332(d)(6). Injunctive and declaratory relief can be aggregated by assessing the value that would flow to the putative class if the court grants declaratory or injunctive relief. *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745

F.3d 1312, 1315-16 (11th Cir. 2014). Here, the aggregate amount of damages, declaratory relief and attorneys' fees sought by Plaintiffs exceed CAFA's $5,000,000.00 amount in controversy requirement, exclusive of costs and interest.

26. With respect to the Second Class Claim, the class definition comprises (i) all individuals with a Loan Modification Agreement provision similar to Plaintiffs' Loan Modification (ii) who SPS has "attempt[ed] to apply, on any Change Date subsequent to the First Change Date, an interest rate increase greater than 2% of the interest rate previously in effect." Am. Compl. ¶ 46(b).

27. On behalf of the putative class, Plaintiffs request in regard to their Second Class Claim: (i) monetary damages for all overpayments, (ii) monetary damages for Defendants' allegedly wrongful conduct, (iii) declaratory relief regarding the correct interest rate for the First Change Date, (iv) declaratory relief regarding the maximum allowable percentage increase for any subsequent change date, (v) an accounting, and (vi) attorneys' fees.

28. The jurisdictional threshold is satisfied merely by Plaintiffs' request for monetary and declaratory relief in their Second Class Claim. Plaintiffs allege they will be injured if the interest rate on their mortgage loan increases by 27% for all payments from December 1, 2016, to December 1, 2017, instead of what they assert to be the correct maximum allowable increase of 2%. Am. Compl. ¶ 27.

29. If Plaintiffs' relief is not granted, Plaintiffs will be required to pay monthly payments of $3,545.71 between December 1, 2016, and December 1, 2017. *See* Am. Compl., Ex. 4. In contrast, if Plaintiffs receive their requested monetary and declaratory relief, Plaintiffs will be required to pay monthly payments of $3,398.50. This is a difference of $147.21 per month or $1766.52 for the period between December 1, 2016 and December 1, 2017.

30. Through their request for declaratory relief, Plaintiffs would receive a benefit of *at least* $28,264.32 in the 16 years until maturity of the Loan. This does not take into account that, under Plaintiffs' request for declaratory relief (Am. Compl. ¶¶ 47-54), this alleged relief, if granted, will radiate over time as SPS would be unable to increase the interest rate in excess of 2% per year through the maturity of the Modification Agreement (*id.* at ¶ 54), which for Plaintiffs is an additional 16 years, or October 1, 2033 (*id.,* Ex. 1 at 1).

31. Assuming, for purposes of this removal petition only, the named Plaintiffs' claims are typical of those of the putative class, as Plaintiffs allege (Am. Compl. ¶ 39), multiplying this same relief to the remaining 227 loans (Ex. B, Pulsipher Aff. at ¶ 11) already known to have Modification Agreements similar to that of Plaintiffs, if successful on their claims, Plaintiffs will have extended a benefit to the putative class of approximately $401,000.04 solely for the period of December 1, 2016, to December 1, 2017.[3] But this relief is not just limited to the time period of December 1, 2016, to December 1, 2017, but to the maturity of the Modification Agreement, which is 16 years. Am. Compl., Ex. 1 at 2. This, over the life of the Modification Agreement, would result in a benefit to the putative class of *at least* $6,416,000.64. Accordingly, the amount in controversy exceeds the $5,000,000.00 jurisdictional threshold under CAFA.[4]

---

[3] Defendants recognize that certain Modification Agreements will have higher or lower interest rates, as well as differing levels of principal remaining on the loan to which the interest rate is applied to. In certain instances, this will make the benefit to the class either more or less than the benefit the proposed putative class plaintiffs receive. At this stage, however, Defendants' obligation is to present a plausible basis for federal jurisdiction, which is satisfied by the analysis stemming from Plaintiffs' allegations regarding their own Modification Agreement. *See Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 549.

[4] Standing alone, Plaintiffs' request for contract damages and declaratory relief reaches the jurisdictional threshold. But Plaintiffs and the putative class's other requests for relief – including tort claims and attorneys' fees, as allowed by statute, *see Estate of Thornton ex. rel. Thornton v. Unum Life Ins. Co. of Am.*, 445 F. Supp.2d 1379, 1382 n.1 (N.D. Ga. 2006) – increase the amount in controversy even more. In addition, there are other bases that add to the amount in controversy, such as Plaintiffs' allegation that there are thousands of more loans like Plaintiffs (Am. Compl. ¶

32.     Therefore, the Second Class Claim, standing alone, satisfies the amount in controversy threshold given the potential monetary damages and declaratory relief.

### III.  CONCLUSION

33.     In conclusion, Defendants submit that CAFA applies to this action because: (1) Plaintiffs commenced this action after CAFA's effective date; (2) there are not less than 100 proposed class members; (3) at least one member of the proposed class is a citizen of a state different from one defendant's state of incorporation and principal place of business; (4) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; and (5) the procedural requirements for removal under 28 U.S.C. § 1446 are met.  For these reasons, Defendants respectfully request that this Court assume full jurisdiction over this action as provided by law.

34.     Defendants intend no admission of liability by this notice and expressly reserve all defenses, motions, and pleas, including without limitation objections to the sufficiency of Plaintiffs' pleadings and to the proprietary of class certification.

Respectfully submitted this 17th day of January, 2017.

[SIGNATURE ON FOLLOWING PAGE]

---

30) and relief to the putative class will compound if the interest rate cannot increase by more than 2% each year over the maturity of the loan, restricting the amount of any further interest rate increases and, accordingly, mortgage loan payment increases.  Each of these considerations, plus the marginal potential recovery related to the First Class Claim, only adds to the amount in controversy.

By: */s/ Kyle G.A. Wallace*
    KYLE G.A. WALLACE
    Georgia Bar Number 734167
    DANIEL F. DIFFLEY*
    Georgia Bar Number 221703
    MICHAEL J. BARRY*
    Georgia Bar Number 211899

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone:  404-881-7000
Facsimile: 404-881-7777
kyle.wallace@alston.com
dan.diffley@alston.com
mike.barry@alston.com
**\**Pro Hac Vice Applications Forthcoming*

*Attorneys for Defendant Select Portfolio Servicing, Inc. and US Bank National Association as Trustee for Certain Mortgage Related Assets*

- 11 -

## CERTIFICATE OF SERVICE

I certify that on this day I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system, and additionally served counsel for Plaintiffs via first class United States Mail, postage prepaid, properly addressed as follows:

| | |
|---|---|
| Harry D. Revell | James Taylor Anderson III |
| Adam W. King | Kernodle Coleman |
| Nicholson Revell LLP | 914 Folly Road, Suite 2 |
| Gateway Professional Center | P.O. Box 13797 |
| 4137 Columbia Road | Charleston, South Carolina 29422 |
| Augusta, Georgia 30907 | tanderson@kernodlelaw.com |
| harry@nicholsonrevell.com | |

Respectfully submitted this 17th day of January, 2017.

By: */s/ Kyle G.A. Wallace*
    KYLE G.A. WALLACE
    Georgia Bar Number 734167