# In the United States District Court
# for the Southern District of Georgia
# Augusta Division

JAMES T. ANDERSON, JR. & MARY
H. ANDERSON,

    Plaintiffs,

            v.

SELECT PORTFOLIO SERVICING,
INC. & U.S. BANK N.A., as
Trustee for Certain Mortgage-
Related Assets,

    Defendants.

No. 1:17-CV-10

## ORDER

Before the Court is Plaintiffs James T. and Mary H. Anderson's ("the Andersons") motion for remand, dkt. no. 8. As explained more fully below, the motion will be **GRANTED** as to remand, but **DENIED** as to attorneys' fees. Defendants Select Portfolio Servicing, Inc. ("SPS") and U.S. Bank N.A. are correct that no document prior to the amended complaint justified removability, so their removal is not per se untimely. But the amended complaint does not establish the requisite amount in controversy. The Court must disregard supplementary evidence submitted by Defendants. And even if it considered that evidence, it could not find removability.

## Background

### The Andersons Have an Adjustable Rate Mortgage

For purposes of this overview, the Court assumes the truth of the facts alleged in the Andersons' currently operative complaint. The Andersons took on an adjustable rate note to buy a home on September 19, 2003. Dkt. No. 1-1 at 105 ¶ 5. That note is in an asset pool of which US Bank N.A. is trustee, and SPS is its servicing agent. Id. at 106 ¶¶ 12-13. The note was bought by Thornburg Mortgage Home Loans, Inc. ("Thornburg"), which entered a loan modification agreement with the Andersons on December 1, 2005. Id. at 105 ¶¶ 7-9.

Under it, the initial interest rate would be 6.25% annually for the first ten years, until December 1, 2015. Id. at 122 § 3(a). That day, and every December 1 thereafter, the rate would be recalculated based on the London Interbank Offered Rate ("LIBOR"), "a benchmark rate that some of the world's leading banks charge each other for short-term loans." Id. § 3(b); *LIBOR*, INVESTOPEDIA, http://www.investopedia.com/terms/l/libor.asp (accessed Mar. 17, 2017). The rate would be "1.875% in excess of [LIBOR] . . . rounded to the nearest one-eighth of one percent." Dkt. No. 1-1 at 122 § 3(c). On December 1, 2015, this was 2.75%.[1]

---

[1] Defendants miscalculated that initial rate and the parties resolved this. Id. at 44-49, 108 ¶ 26; Dkt. No. 27 at 5.

The agreement also limited rate fluctuation. On December 1, 2015, the rate would "not increase by more than 5% of the interest rate previously in effect." Dkt. No. 1-1 at 122 § 3(e). Each following year, it would "not increase or decrease by more than 2% of the interest rate previously in effect." Id. Additionally, the interest rate would "never be greater than 11.25% or less than 1.875%." Id.

The parties dispute these terms' meanings. On December 1, 2016, Defendants raised the Andersons' rate to 3.5%, which the Andersons claim to be excessive as "27% of the interest rate previously in effect." Id. at 108 ¶ 27.

**The Parties Began Litigating in State Court**

The Andersons filed a class-action suit in Richmond County Superior Court on January 14, 2016, on behalf of

> [a]ll persons who entered into a loan modification agreement with Thornburg whereby their interest rate was "fixed" for a given period of time and thereafter converted to an "adjustable rate" subject to a "Limits on Interest Rate Changes" provision substantially identical to Section 3(e) of the Loan Modification Agreement, <u>and to whose loan Defendants applied a maximum limit on the amount of allowable interest rate decrease occurring on the First Change Date</u>.

Id. at 5, 12 ¶ 43 (emphasis added). They alleged that this class contained "many hundreds, or perhaps thousands, of homeowners." Id. 9-10 ¶¶ 27-30.

3

But SPS's Curtis Pulsipher testified in a March 21, 2016 affidavit ("Pulsipher I") that there was "only one additional loan in the group of Thornburg loans where the interest rate at the first change date was not calculated correctly under the loan modification agreement," and that it was changed before there was any wrongful payment. Dkt. No. 1-2 at 4 ¶¶ 12-13. He also testified that there were 228 Thornburg-SPS loans "that were originated as adjustable interest rate loans and subsequently modified by Thornburg to remain adjustable rate loans." Id. ¶ 11.[2]

The Andersons added a second putative class of plaintiffs on January 10, 2017:

> All persons who entered into a loan modification agreement with Thornburg whereby their interest rate was "fixed" for a given period of time and thereafter converted to an "adjustable rate" subject to a "Limits on Interest Rate Changes" provision substantially identical to Section 3(e) of the Loan Modification Agreement, <u>and to whose loan Defendants have attempted to apply, on any Change Date subsequent to the First Change Date, an interest rate increase of greater than 2% of the interest rate previously in effect.</u>

Dkt. No. 1-1 at 112-13 ¶ 46(b).

The next morning, the Superior Court limited the Andersons' interest-rate changes and enjoined Defendants making from negative credit references or starting foreclosure proceedings against them. Dkt. No. 11-1 at 23:19-24:4.

---

[2] Defendants have since reduced this number to 198. Dkt. No. 27 at 8 n.3.

4

**Defendants Remove the Case to this Court**

Six days later, Defendants removed the case. Dkt. No. 1. Their notice appended the original complaint, dkt. no. 1-1 at 5-18, the loan modification agreement, id. at 20-23, the amended complaint, id. at 104-20, and Pulsipher I, dkt. no. 1-2. The Andersons timely moved for remand. Dkt. No. 9.

Defendants responded on February 28, 2017. Dkt. No. 27. Their response appended another declaration from Pulsipher ("Pulsipher II"). Dkt. No. 27-2. It also contained a spreadsheet ("the Spreadsheet") with data relating to 198 loans "possessing a Modification Agreement substantially similar to Plaintiffs." Dkt. No. 27-1; see also Dkt. No. 29. The average time remaining on each after the first day of interest-rate adjustment was 22.12 years, with the average interest rate set at 1.9%. Dkt. No. 27-1 at 10. The average interest-rate-change limit was 1.97%. Id.

The Andersons replied. Dkt. No. 32. This Court heard oral arguments on the remand motion on April 12, 2017. Dkt. No. 35. The parties supplemented their briefing on April 24, 2017. Dkt. Nos. 36, 37. At that time, Defendants filed various LIBOR forecasts. Dkt. Nos. 37 at 14-15, 37-3, 37-4, 37-5, 37-6, 37-7. The motion is ripe for disposition.

## LEGAL STANDARD

Federal courts' jurisdiction is limited to "that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A defendant is authorized to remove a civil suit to federal court within 30 days of either the plaintiff's initial pleading or "receipt by the defendant . . . of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446(b)(1), (3).

The removal notice must "contain[ ] a short and plain statement of the grounds for removal." Id. § 1446(a). It must show that the federal court has original jurisdiction. Id. § 1441(a). Such jurisdiction extends to "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action" with diversity of citizenship. Id. § 1332(d)(2).

"[N]o antiremoval presumption attends" such cases. Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014); see also Dudley v. Eli Lilly & Co., 778 F.3d 909, 912 (11th Cir. 2014). But where, as here, "damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." Lowery v. Ala. Power Co., 483 F.3d 1184, 1208

AO 72A
(Rev. 8/82)

(11th Cir. 2007). "Preponderance" means that removability is "unambiguously" clear. Id. at 1213. Although "absolute certainty is neither attainable nor required, the value of declaratory . . . relief must be 'sufficiently measurable and certain'." S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1316 (11th Cir. 2014) (quoting Morrison v. Allstate Ins. Co., 28 F.3d 1255, 1269 (11th Cir. 2000) (citation omitted)). Remand is required if the amount in controversy is "too speculative and immeasurable." Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000) (quoting Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elec., Inc., 120 F.3d 216, 221-22 (11th Cir. 1997)).

## DISCUSSION

Remand is **GRANTED**. Attorneys' fees are **DENIED**.

### I. THIS CASE MUST BE REMANDED.

This case must be remanded. Defendants did not wait too long to remove, as no document before the amended complaint supported removability. But the amended complaint does not establish the requisite amount in controversy. Defendants cannot rely on supplemental evidence obtained elsewhere than from the Andersons. Even if they could, LIBOR is too unpredictable for removal to be proper.

## A. Defendants Did Not Wait Too Long to Remove.

Although remand is appropriate, Defendants did not err by failing to remove earlier, as the Andersons suggest. No document prior to the amended complaint provided Defendants with a basis for removal. 28 U.S.C. § 1446 authorizes removal at two points in time: "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based," or "within 30 days after receipt by the defendant . . . of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446(b)(1), (3). The Andersons suggest that if anything, this suit should have been removed within 30 days of the original complaint. Dkt. No. 9 at 19. They rely on three of their original allegations: (1) they were being overcharged by $325.28 monthly; (2) their putative class contained "many hundreds, or perhaps thousands" of plaintiffs; and (3) multiplying the Andersons' monthly overcharge by twelve, then by sixteen for the years left in their loan term, then by 100 plaintiffs, equals more than $5 million. Id. at 19-20 (citation omitted).

Removal at this case's outset would have been improper, because the original complaint did not give Defendants "a good faith basis for asserting that the amount in controversy

AO 72A
(Rev. 8/82)

requirement was satisfied." Randall v. Target Corp., No. 13-61196-CIV, 2013 WL 3448116, at *4 (S.D. Fla. July 9, 2013). Defendants claim, and the Andersons have not contested, that Defendants reviewed their records immediately after being served. Dkt. No. 27 at 1. Pulsipher I, dated March 21, 2016, testifies that they only found one loan fitting into the putative class—and no wrongful payments were made under it before its rate was corrected. Dkt. No. 1-2 ¶¶ 12-13. Those findings dispelled any removal hope Defendants might have had. Defendants' removal motion is not too late by virtue of following the amended complaint.

### B. The Amended Complaint Does Not Establish the Requisite Amount in Controversy.

But, looking to the amended complaint, the Court cannot find that the amount in controversy here is unambiguously at least $5 million. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007) (describing "the heart" of the analysis as whether the removal notice and its attachments "unambiguously establish federal jurisdiction."); but see Mitchell v. Cody Exp., LLC, No. 3:16-CV-165, 2016 WL 6246793, at *4 (M.D. Ala. Oct. 25, 2016) (commenting that Lowery's standard has met an icy reception and admitting to not understanding its rationale). The amended complaint does not allege that amount to be in controversy. See generally Dkt.
AO 72A
(Rev. 8/82)

No. 1-1 at 104-20. Defendants' removal notice fails to convincingly posit that amount to have been in controversy. It claims that $1766.52 was in controversy for 2016-17. Dkt. No. 1 ¶ 29. Then, it simply multiplies this by sixteen to find the amount for the Andersons' loan's entire life, then multiplies that number by 228 to get the putative class's grand total. Id. ¶¶ 30-31. That math is far too simple. "The only way each class member would have the same damages would be if they each had the same loan, for the same amount, with the same terms; and paid the same amount," and "[t]here is nothing to suggest that scenario here." White v. Impac Funding Corp., No. 6:10-CV-1780, 2011 WL 836947, at *5 (M.D. Fla. Feb. 15, 2011), adopted, 2011 WL 861172 (M.D. Fla. Mar. 9, 2011). The Court cannot find removability based on the amended complaint.

### C. Defendants Cannot Supplement their Argument with Evidence Received Elsewhere than from the Andersons.

That means remand must be granted. Defendants cannot supplement their case with their evidence, as it did not come from the Andersons.[3] In Lowery v. Alabama Power Co., the defendant removed the case after the plaintiffs amended their

---

[3] The Andersons incorrectly claim that the evidence is also improper because the Court cannot look beyond "the limited universe of evidence available when the motion to remand is filed." Dkt. No. 36 at 3 (quoting Lowery, 483 F.3d at 1214). The Eleventh Circuit has held that this language from Lowery is not binding and should be disregarded. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 772-74 (11th Cir. 2010); accord Shannon v. Albertelli Firm, P.C., 610 F. App'x 866, 871 n.2 (11th Cir. 2015) (per curiam).

AO 72A (Rev. 8/82)

complaint to "add[ ] more than four hundred plaintiffs and amend[ ] their prayers for relief." 483 F.3d at 1188. The defendant tried to support removal with evidence that "recent mass tort actions" had netted "greater than $5,000,000." Id. at 1189. The Eleventh Circuit held that because this evidence "was not received from the plaintiffs, but rather was gathered from outside sources," it was "not of the sort contemplated by [28 U.S.C.] § 1446(b)." Id. at 1221. That holding bars consideration of Pulsipher II, the Spreadsheet, and Defendants' LIBOR forecasts here. See Dkt. No. 37 at 11 (conceding that "Lowery . . . preclude[d] a defendant's . . . evidence (even though it was the plaintiff who had caused the changed circumstances [arguably triggering removability] by filing an amended complaint).").

To be sure, Lowery is thorny. The general rule lurking behind it is that a defendant cannot create removability using one of its own documents. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 761 (11th Cir. 2010). As Defendants point out, that is not what they are trying to do. Dkt. No. 37 at 11. Defendants clearly identify the amended complaint as the document triggering removability, and their own evidence is simply an effort to illuminate that document's significance. Apart from two conclusory lines of Lowery, Defendants' evidence would apparently be permissible. Pretka, 608 F.3d at

11

761 ("[The] 'receipt from the plaintiff' rule plainly does not limit the type of evidence a defendant may use to establish that the plaintiff's complaint already is removable—without any 'conversion.'"). But Lowery binds.

Defendants' two contentions to the contrary are unconvincing. Defendants first claim that Lowery was abrogated by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). Dkt. No. 37 at 11. Dart Cherokee merely noted that "both sides submit proof" when disputing the amount in controversy. Id. Defendants go astray by "read[ing] into [Dart Cherokee] more than is there in order to justify not following a particularly pesky . . . precedent." Johnson v. K Mart Corp., 273 F.3d 1035, 1067 (11th Cir. 2001) (Carnes, J., dissenting), reh'g en banc granted & op. vac'd, Dec. 19, 2001; see also Garrett v. Univ. of Ala. at Birmingham Bd. of Tr., 344 F.3d 1288, 1292 (11th Cir. 2003) (per curiam) ("While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point.").

Defendants then point to Whaley v. Bay View Law Group, PC, No. CV 114-050, 2014 WL 4926458 (S.D. Ga. Sept. 30, 2014). But Whaley did not meaningfully grapple with Lowery, so it gives this Court no way to get out from underneath that case. Because Lowery has not been overturned, the Court must

disregard Pulsipher II, the Spreadsheet, and Defendants' LIBOR forecasts. However, the continued viability of <u>Lowery</u> is just one, but not the only, reason remand is appropriate.

**D. Remand Would Be In Order Even Were the Court to Consider Defendants' Evidence.**

Remand would be required even if the Court did consider Defendants' additional evidence. The Spreadsheet shows that the average interest rate for the loans at issue is pegged at 1.9% over LIBOR, with a change limit of 1.97% and an average of 22.12 term years remaining. Dkt. No. 27-1 at 10. Thus, where LIBOR goes over the next two decades, and how quickly, will determine the size of the gap between Defendants' and the Andersons' interest calculations. <u>See</u> Dkt. No. 36 at 8, 10-11 (modeling gap as less than $5 million given certain LIBORs). In estimating that, it is not enough to assume LIBOR hits its all-time low and stays there. <u>See</u> Dkt. No. 27 at 15-16.[4] Nor can the Court guess that LIBOR will hold steady. <u>See id.</u> Nor may it assume LIBOR will "increase back to its historically normal levels." <u>See id.</u> at 12. Nor does the only data that the Court can be sure about—that for the most recent year—even come close to $5 million. <u>See id.</u> at 11 (identifying amount in controversy for most recent year as $388,135.44), 18 (adding $97,033.86 for attorneys' fees).

---

[4] Defendants invite the Court to rewrite the Andersons' claim into one that the interest rate must be 1.875% of LIBOR. <u>Id.</u> at 14-16. This is spurious.

Instead, the Court must consider all plausible LIBORs, and all plausible rates of change thereto, including ones that would put the interest rate within the ranges that would be found under the Andersons' formula. LIBOR's range has proven quite tectonically active over the past twenty-two years, with sudden eruptions, rapid slides, and a half-decade of calm depression. The following picture spares the need for the proverbial thousand words of volatility descriptions:



*12-Month London Interbank Offered Rate (LIBOR), Based on U.S. Dollar*, FRED Ec. Data, Fed. Reserve Bank of St. Louis, http://bit.ly/2mlhJWQ (accessed Mar. 20, 2017). That topography is the result of unpredictable market movement, a historic economic recession, and other unforeseeable forces. See, e.g., Liam Vaughan & Gavin Finch, *Libor Scandal: The Bankers Who Fixed the World's Most Important Number*, The Guardian (UK), Jan. 18, 2017, 1:00 EST, http://bit.ly/2jJROD7. In light of this history, it would be sheer speculation to

14

guess LIBOR's altitude and incline over the next two decades—even in light of the forecasts Defendants supplied. Dkt. Nos. 37 at 14-15, 37-3, 37-4, 37-5, 37-6, 37-7.

For this reason, the amount in controversy is just "too speculative and immeasurable" to permit removal. Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000) (quoting Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elec., Inc., 120 F.3d 216, 221-22 (11th Cir. 1997)). Even considering Defendants' additional evidence, then, this case must be **REMANDED**. Cf. Vicksburg, S. & P. Ry. Co. v. Nattin, 58 F.2d 979, 980 (5th Cir. 1932) ("Only prophetic ken of a rare order could forecast what will ensue. Jurisdiction is based on actuality, not prophecy . . . .").[5]

## II. ATTORNEYS' FEES ARE DENIED.

The Andersons' request for attorneys' fees under 28 U.S.C. § 1447(c) will be denied. Whether to award attorneys' fees in remand motions is a discretionary matter. Graham Commercial Realty, Inc. v. Shamsi, 75 F. Supp. 2d 1371, 1373 (N.D. Ga. 1998). "Defendants' attempt at removal" here was not "so lacking as to justify . . . an award." Sapp v. AT & T Corp., 215 F. Supp. 2d 1273, 1279 (M.D. Ala. 2002). "Although Defendants presented insufficient evidence to satisfy the legal standard, it was reasonable to test the bounds

---

[5] Binding precedent, under Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

of Lowery" in light of Dart Cherokee. C and E, Inc. v. Friedman's Jewelers, Inc., No. CV 107-122, 2008 WL 64632, at *3 (S.D. Ga. Jan. 4, 2008). The Andersons' motion for attorneys' fees is **DENIED**.

## CONCLUSION

The Andersons' Motion to Remand and for Attorney Fees, dkt. no. 8, is **GRANTED** as to remand, but **DENIED** as to attorneys' fees. The Clerk of Court is hereby directed to **REMAND** this case to the Superior Court of Richmond County. All other outstanding motions in this case are **DENIED as moot**.

**SO ORDERED**, this 29th day of June, 2017.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA